# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL TRAIG PRIDE,<br><br>    Defendant. | Case No. CR-23-124-RAW |

## ORDER

This action arises from a tragic single-vehicle rollover accident on May 11, 2022 that resulted in the deaths of the Defendant's three-year-old daughter (A.L.P.), his 9-month-old daughter (A.R.P.), and his pregnant partner (C.U.). The Defendant was driving the vehicle and was originally charged with two counts of child neglect in Indian Country and three counts of involuntary manslaughter. That case was dismissed without prejudice in an Opinion and Order issued on May 25, 2023, finding the Indictment insufficient, as it failed to set forth any allegations regarding the nature of the illegal activity underlying the child neglect charges or the lawful or unlawful acts underlying the involuntary manslaughter charges. Case No. CR-22-159-JFH, Docket No. 45.

Thereafter, on July 12, 2023, the Federal Grand Jury returned an Indictment in this case charging the Defendant with:

- Two counts of child neglect in Indian Country in violation of 18 U.S.C. §§ 1151 and 1153 and 21 OKLA. STAT. § 843.5(C);
- Two counts of second-degree murder in Indian Country in violation of 18 U.S.C. §§ 1111(a), 1151, and 1153; and

- One count of involuntary manslaughter in Indian Country in violation of 18 U.S.C. §§ 1112, 1151, and 1153.

Now before the court are the Defendant's motion to dismiss the Indictment [Docket No. 27], the Government's response thereto [Docket No. 42], and the Defendant's reply [Docket No. 62]. The Defendant argues that the Indictment should be dismissed for vindictive prosecution. In the alternative, the Defendant argues that each of the charges should be dismissed as insufficiently alleged and that the child neglect charges should be dismissed because 21 OKLA. STAT. § 843.5(C) is unconstitutionally vague as applied to him.

Also before the court are the Government's notice of intent to admit evidence as *res gestae* and under Federal Rule of Evidence 404(b) [Docket No. 48], the Defendant's objection thereto [Docket No. 63], and the Government's reply to the objection [Docket No. 78]. The court also addresses herein the Defendant's unopposed request for a pretrial hearing regarding jury instructions [Docket No. 41].

I. **Rule 404(b) Evidence**

The Government noticed its intent to admit the following evidence as *res gestae* and under Rule 404(b):

1. That the Defendant has never possessed a valid driver's licence and that his driving privileges were suspended at the time of the crash at issue in this case;[1]
2. That the Defendant was cited for driving without a license in 2013 and 2014;[2]
3. That the Defendant continued to operate a motor vehicle after the crash at issue in this case and was doing so at the time he was arrested in December of 2022.[3]

---

[1] It is unclear how a person who has never possessed a valid driver's license can also have his driving privileges suspended.

[2] The Government also noticed its intent to admit evidence that the Defendant was cited for not wearing a seat belt in 2016, but the Government did not respond to the Defendant's objection to this evidence; thus, the motion is granted as to this evidence.

[3] The Government also noticed its intent to admit evidence that the Defendant purchased a vehicle in his partner's name after she was deceased, but the Defendant objected with evidence that the vehicle was purchased before his partner was deceased. The Government did not

The Government argues, *inter alia*, that this evidence is inextricably intertwined with the charged offenses and that it shows the Defendant's intent, knowledge, absence of mistake, or lack of accident with regard to the charged offenses, which is highly relevant to whether he acted with malice aforethought.  The Defendant objects to this evidence, arguing, *inter alia*, that it is not *res gestae*, relevant, or probative.

The Indictment charges in Counts One and Three that:

> On or about May 11, 2022, within the Eastern District of Oklahoma, in Indian Country, the defendant, MICHAEL TRAIG PRIDE, an Indian, while responsible for the health, safety, and welfare of a child, did willfully and maliciously fail and omit to provide [A.L.P./A.R.P.][4], a child under eighteen (18) years of age, adequate and appropriate supervision to protect [A.L.P./A.R.P.] from harm and threatened harm of which any reasonable and prudent person responsible for the child's health, safety, and welfare would be aware and exposed [A.L.P./A.R.P.] to illegal activities, *by failing to properly secure [A.L.P./A.R.P.] in a child passenger restraint system in a motor vehicle the defendant operated on the roadways, streets, and highways without a valid driver's licence and at a rate of speed in excess of the speed limit*, in violation Title 18, United States Code, Sections 1151, 1153, and Title 21 Oklahoma Statutes, Section 843.5(C).

Docket No. 3, at 1-2 (emphasis added).  The Indictment charges in Counts Two and Four that:

> On or about May 11, 2022, within the Eastern District of Oklahoma, in Indian Country, the defendant, MICHAEL TRAIG PRIDE, an Indian, did unlawfully kill [A.L.P./A.R.P.][5] *with malice aforethought* through a depraved-heart and in the commission of a felony that does not fall under the first-degree murder paragraph of Title 18, United States Code, Section 1111(a), to wit: Child Neglect, in violation of Title 18, United States Code, Sections 1111(a), 1151, and 1153.

Docket No. 3, at 2-3 (emphasis added).  The Indictment charges in Count Five:

> On or about May 11, 2022, within the Eastern District of Oklahoma, in Indian Country, the defendant, MICHAEL TRAIG PRIDE, an Indian, did unlawfully kill C.U., while in the commission of an unlawful act not amount to a felony, to wit: *operating a motor vehicle without a valid driver's license and at an excessive rate of speed*, and in the commission in an unlawful manner and without due caution and circumspection, of a

---

mention the purchase again in its response to the Defendant's objection; thus, the court grants the motion as to this evidence.

[4] Count One relates to A.L.P., and Count Three relates to A.R.P.
[5] Count Two relates to the death of A.L.P., and Count Four relates to the death of A.R.P.

>lawful act, operating a motor vehicle, which might produce death, in violation of Title 18, United States Code, Sections 1112, 1151, and 1153.

Docket No. 3, at 3 (emphasis added).

Based upon the language of the Indictment alone, it appears that the evidence of the Defendant's lack of a valid license is part and parcel of the offenses charged.[6] Nevertheless, despite the reference in the Indictment to the Defendant's operation of a motor vehicle without a license, the court is not convinced the evidence at issue is *res gestae*.

Evidence of other crimes, wrongs, or acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). It may, however, be admissible for another purpose, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Rule 404(b) evidence is admissible only if the following four requirements are met:

(1) The evidence is offered for a proper purpose under Fed. R. Evid. 404(b);
(2)  the evidence is relevant under Fed. R. Evid. 401;
(3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and
(4) the district court, upon request, instructs the jury to consider the evidence only for the purpose for which it was admitted.

---

[6] Of course, allegations in an indictment may be stricken if not relevant to the charge and included in an attempt to circumvent Rule 404(b). *See United States v Searles*, No. 07-CR-0195-CVE, 2009 WL 302306, at *7 (N.D. Okla. Feb. 6, 2009) (admonishing the government that the court may exclude and strike allegations from the indictment if the government does not use them to prove its case-in-chief and it becomes clear that the allegations were included in an attempt to circumvent Rule 404(b)). "If the challenged language is information that the government intends prove as part of its case-in-chief, the language should not be considered surplusage regardless of the prejudicial impact of the evidence." *Id*. (citation omitted). Allegations are rarely stricken from an indictment, as jury instructions are generally sufficient to prevent any prejudice. *Id*. (citation omitted).

*United States v. Leonard*, 439 F.3d 648, 650 (10th Cir. 2006) (citing *United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001)).  As to the first factor, the Government offers the evidence for a proper purpose – to prove the Defendant's intent, knowledge, absence of mistake, or lack of accident with regard to the charged offenses, which is relevant to establish malice aforethought.

As to the second factor, in *Leonard* the government argued that evidence of fifteen years of the defendant's driving record, including nine citations for driving with a suspended license, was properly offered under Rule 404(b) to prove malice aforethought.  The defendant argued that evidence of his citations for driving with a suspended license was irrelevant to the issue of whether he acted with malice aforethought and that even if the evidence was relevant, it was overly prejudicial.  The Tenth Circuit disagreed.

> Citations for driving with a suspended license, like citations for drunk driving, convey to the malefactor society's considered view that the cited conduct is dangerous.  Admittedly, drunk driving is more likely to be dangerous than a single instance of driving with a suspended license.  But the requirement of having a license has a serious purpose: to ensure that drivers meet all safety regulations and qualifications.  Persistent violations of this requirement betoken a conscious disregard for these considerations.  A jury may infer that an individual with a record like Mr. Leonard's "knows better than most" that his conduct is illegal and unsafe, and continues to do so in defiance of that risk.  This evidence tends to show, *even if only slightly*, that Mr. Leonard acted with malice aforethought.  Accordingly, it is relevant under Rule 401.

*Id*. at 651 (emphasis added).[7]

---

[7] The court emphasizes "even if only slightly" because it does not necessarily agree with the Government's assessment of this evidence as being "highly relevant" or having "significant probative value."  It is relevant evidence.  Nevertheless, the court notes that while the Government argues on the one hand that the Defendant would have known of his responsibility to properly restrain a child if he had a valid license, the Government also argues on the other hand that the Defendant did, in fact, know of this responsibility, as evidenced by the papers he signed to obtain proper child restraints.
    The court also notes that the Defendant's citation to *Hening v. Union Pacific R.R. Co.*, 530 F.3d 1206, 1218 (10th Cir. 2008), a civil case finding that "the lack of a license is not relevant to whether a driver was negligent at the time of an accident," is not applicable here.  The issue is not what may be used to prove civil negligence, but what may be used to prove malice aforethought.

As to the third factor, the court finds that the probative value is not substantially outweighed by the danger of unfair prejudice. In *Leonard*, the court allowed nine suspended license citations as well as six other citations. Here the Government is only offering the fact of his lack of license, two citations for his lack of license, and his continued driving without a license in the months between the accident and his arrest. In fact, "the jury acquitted Mr. Leonard of the second degree murder charge, suggesting that evidence of Mr. Leonard's driving record did not evoke an emotional response and did not prejudice the jury." *Id*. at 652. Exclusion under Rule 403 "is an extraordinary remedy that should be used sparingly." *Id*. at 652 (citation and internal brackets omitted).

The Defendant's objection to the Government's notice of intent to admit Rule 404(b) evidence is overruled. Upon request, the court will provide instruction to the jury stating that the evidence may be considered only as it bears on the Defendant's intent, knowledge, absence of mistake, or lack of accident.[8]

## II. **Vindictive Prosecution**

"Vindictive prosecution occurs when the government retaliates against a defendant for exercising his or her constitutional or statutory rights, such as the right to file an appeal or the right to present a defense." *United States v. Ray*, 899 F.3d 852, 860 (10th Cir. 2018). In making such a claim, a defendant alleges either actual or presumptive vindictiveness. *Id*. Here, the Defendant has alleged presumptive vindictiveness. To establish it, he "must show that 'as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would

---

[8] The court notes while the Government has set forth each of these purposes, the court would only instruct on any that are relevant at the conclusion of the Government's case. Additionally, the purpose of "lack of accident" may be confusing to a jury in this case considering it involves an automobile accident and considering the definitions included in Oklahoma's child neglect statute.

not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right.'" *Id*. (citing *United States v. Wall*, 37 F.3d 1443, 1448 (10th Cir. 1994)).

The Defendant acknowledges that "courts tend to find presumptive vindictiveness only in *post-trial* situations, such as when a defendant successfully attacks his first conviction and then receives a harsher sentence on retrial, or when the prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing by charging a successful appellant with a felony covering the same facts." *Id*. (citations and internal quotations omitted) (emphasis added). "[N]either the Supreme Court nor the Tenth Circuit has ever found presumptive vindictiveness in a *pretrial* setting." *Id*. (citation and internal quotations omitted) (emphasis added). To be clear, this case is in the *pretrial* stage.

In *Ray*, cited by the Defendant in this case, the defendant argued that after he filed several pretrial motions and declined a plea offer, the government retaliated against him by filing a superseding indictment, adding two additional counts that could have been but were not included in the original indictment. The Tenth Circuit declined to presume that the prosecutor vindictively added the new counts in retaliation for the defendant's pretrial motions or for his refusal to enter a plea.

Here, the Defendant argues that after he was successful in his motion to dismiss the original Indictment as being insufficient, the Government retaliated against him by "upping the ante" in the new Indictment with charges of second-degree murder rather than involuntary manslaughter as was originally charged. Without regard to the posture of this case, this leap in charges certainly seems extreme.

7

Nevertheless, as the Supreme Court has held, "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting." *United States v. Goodwin*, 457 U.S. 368, 381 (1982).

> In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the [government] has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the [government] has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*Id*.

Again, this case is in the pretrial stage. Moreover, the Government has pointed to evidence it received during the course of preparing this case for trial, including, *inter alia*, two expert reports – one concluding that the Defendant was traveling approximately 78 mph prior to the loss of control, without regard to any braking by the Defendant prior to the loss of control; the other concluding that all occupants of the Defendant's Chevrolet Tahoe were unrestrained, which directly resulted in the victims' ejection from the vehicle and their untimely deaths – received on June 12, 2023, after the dismissal of the original Indictment. Docket Nos. 42-2, at 17 and 42-3, at 24. The Government states that taking into account the new evidence, the new potential charges were submitted through its ordinary process to its Indictment Review Committee and then the Indictment was returned and filed.

Accordingly, like the Tenth Circuit did in *Ray*, this court declines to presume that the Government vindictively "upped the ante" in retaliation for the Defendant's pretrial motions. Furthermore, even if the court were to so presume, the Government has rebutted any such presumption.

8

As this Order was being drafted, the court allowed the Defendant to supplement his motion to dismiss with a recent decision issued by the Sixth Circuit in *United States v. Zakhari*, 85 F.4th 367 (6th Cir. 2023). In that case, after vigorous motion practice by Zakhari, the prosecutor added an extra charge substantially increasing his mandatory minimum sentence. The Sixth Circuit concluded that Zakhari had shown enough to presume vindictiveness and the district court abused its discretion by failing to require the prosecution to justify the additional count using "objective, on-the-record explanations." *Id*. at 381.

The Sixth Circuit acknowledged that "pretrial motions do not generally provide a sufficient basis for vindictiveness," but then noted that "each situation will necessarily turn on its own facts." *Id*. (citations and internal brackets omitted). The Sixth Circuit further reasoned:

> Although there is a high bar to prove vindictiveness, part of what makes clearing that bar difficult is that, in the instance of presumptive vindictiveness, the government has the opportunity to rebut the presumption. This is not to say that the threshold to establish a presumption is not high too—it is, particularly in the pretrial setting—but Zakhari showed enough.

*Id*. at 383. In *Zakhari*, "seven months passed between the first indictment and the second, which increased Zakhari's potential mandatory minimum sentence by five years, and there was no '*new knowledge or change in circumstances*.'" *Id*. (emphasis added).

In the case before the court, as stated above, the Government has provided new evidence sufficient to rebut any presumption of vindictiveness. The Sixth Circuit noted that adding a charge is arguably less vindictive than substituting a more severe charge for a less severe one, as is the situation in the case before the court. *Id*. at 381. The court agrees that substituting a second-degree murder charge for an involuntary manslaughter charge is severe. Nevertheless, in

9

*Zakhari*, there was "no new knowledge or change in circumstances." Here, there is new evidence. Accordingly, the motion to dismiss for vindictive prosecution is denied.[9]

    III.    **<u>Insufficient Allegations & Constitutionality Challenges</u>**

"Where a defendant challenges the sufficiency of an indictment for failure to state an offense, a court generally is bound by the factual allegations contained within the four corners of the indictment." *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003) (citation omitted). The Indictment is to "be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true. *Id*. (citation omitted). The Indictment "is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *Id.* (citation omitted).

Additionally, "[o]n a motion to dismiss an indictment, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006). The Defendant argues that the allegations charged in the Indictment in this case are insufficient to support the charged offenses even if true.

---

[9] In his reply, the Defendant requests a hearing on the issue of vindictive prosecution, citing *United States v. P.H.E., Inc*., 965 F.2d 848 (10th Cir. 1992). That case is inapposite. It concerned a prosecutorial attempt to curtail future First Amendment protected speech, and the Tenth Circuit found that the appellants had satisfied their burden of showing that the indictment was so tainted. *Id*. at 860. The Defendant has made no such allegations here, nor of any actual vindictiveness. Moreover, the Government has provided evidence sufficiently rebutting the Defendant's argument that the new Indictment would not have been so charged but for hostility or punitive animus for Defendant's successful motion to dismiss. No further hearing is necessary.

**A. Second Degree Murder Charges**

In Counts Two and Four of the Indictment, the Defendant is charged with second-degree murder for the deaths of his two daughters, three-year-old A.L.P and 9-month-old A.R.P. The Defendant challenges the sufficiency of the Indictment as to these charges, arguing that taking the allegations of the Indictment as true, no jury could find that he is guilty of second-degree murder.

As stated above, the Indictment charges in Counts Two and Four:

> On or about May 11, 2022, within the Eastern District of Oklahoma, in Indian Country, the defendant, MICHAEL TRAIG PRIDE, an Indian, did unlawfully kill [A.L.P./A.R.P.][10] with malice aforethought *through a depraved-heart and in the commission of a felony* that does not fall under the first-degree murder paragraph of Title 18, United States Code, Section 1111(a), to wit: Child Neglect, in violation of Title 18, United States Code, Sections 1111(a), 1151, and 1153.

Docket No. 3, at 2-3. The elements of second-degree murder are:

> (1) the defendant caused the death of the victim named in the indictment;
> (2) the defendant killed the victim with malice aforethought; and
> (3) the killing took place within the territorial jurisdiction of the United States.

*See* Tenth Circuit Criminal Pattern Jury Instruction 2.53. The Comment to this instruction advises that the second element – malice aforethought – may be satisfied in one of four ways:

> (1) intent-to-kill without the added ingredient of premeditation and deliberation;
> (2) intent to do serious bodily injury;
> (3) a depraved-heart; or
> (4) commission of a felony when the crime does not fall under the first-degree murder paragraph of § 1111(a)."

*Id.* (citing *United States v. Pearson*, 203 F.3d 1243, 1271 (10th Cir. 2000)).

The Indictment in this case does not charge the Defendant with any specific intent; thus, the first two ways of proving malice aforethought are not at issue. Instead, it charges him with

---

[10] Count Two relates to the death of A.L.P., and Count Four relates to the death of A.R.P.

11

depraved heart murder and second-degree felony murder. In a recent case concluding that depraved heart murder and second-degree felony murder are crimes of violence, the Tenth Circuit revisited those definitions in *United States v. Kepler*, 74 F.4th 1292 (2023).

"For 'depraved-heart' malice, a jury may find general intent if the defendant's conduct was so 'reckless and wanton' that the jury 'is warranted in inferring that [the] defendant was aware of a serious risk of death or serious bodily harm.'" *Id*. at 1300 (citation omitted) (internal brackets in original). "Second-degree murder involves reckless and wanton disregard for human life that is *extreme in nature*." *Id*. (citation omitted) (emphasis added).

The Tenth Circuit explains that for first-degree felony murder, there is no intent requirement. *Id*. The Government must prove only the commission of a separate enumerated felony listed in 18 U.S.C. § 1111(a). *Id*. "In contrast, the 'malice aforethought' that must be established for second-degree [felony] murder requires proof of malice with respect to the homicide' –the prosecution must prove both the commission of a separate non-enumerated felony and malice for the homicide itself." *Id*. at 1300-01 (citation omitted) (internal brackets in original). As the Government has not charged any specific intent, to prove the second-degree felony murder charge in this case, the Government must prove both the commission of a separate non-enumerated felony and "depraved-heart" malice.

The Government acknowledges and argues that it can prove malice aforethought through a depraved heart *or* through both a depraved heart and the commission of a separate non-enumerated felony, namely Child Neglect in Indian Country.[11] It alleges that the Defendant

---

[11] Again, under either charged act – depraved heart murder or second-degree felony murder – the Government must prove that the defendant acted with malice aforethought through a depraved heart. The Government need not have charged second-degree felony murder if it can prove the Defendant acted with a depraved heart. The court does not, therefore, address the Defendant's "turducken approach" argument – that the Government "hopes to transmogrify

committed child neglect "by failing to properly secure [A.L.P./A.R.P.] in a child passenger restraint system in a motor vehicle the defendant operated on the roadways, streets, and highways without a valid driver's license and at a rate of speed in excess of the speed limit." Docket No. 3, at 1-2. The Government further argues that these same actions constitute reckless and wanton disregard for human life that is extreme in nature.

The Defendant lists cases involving defendants who drove while extremely intoxicated and engaged in outrageous driving that caused a collision to argue that those are the only situations where murder convictions based on depraved heart recklessness have been affirmed. Even if true, this does not mean that other actions, inactions, or combinations thereof might also constitute depraved heart recklessness.

The Defendant argues that even if the Government proves that the Defendant failed to properly secure A.L.P. and A.R.P. in child passenger restraint systems in his vehicle and then drove without a valid driver's license at a rate of speed in excess of the speed limit, this is insufficient to prove second-degree murder. The court is not so sure. The court cannot find that such allegations could never support a finding of depraved heart recklessness, and the court is not to parse the evidence. While the Defendant may well be correct that the Government wildly overcharged this case, only the evidence will tell.

The allegations in the Indictment are sufficient, as they set forth the elements of the offense charged, put the Defendant on fair notice of the charges against which he must defend, and enable him to assert a double jeopardy defense. The motion to dismiss the second-degree murder charges as insufficiently alleged is denied.

---

alleged minor traffic violations into a felony that carries a punishment up to life in prison" – at this time. It does, of course, address the felony child neglect charges below.

**B. Child Neglect Charges**

As stated above, the Indictment charges in Counts One and Three that:

On or about May 11, 2022, within the Eastern District of Oklahoma, in Indian Country, the defendant, MICHAEL TRAIG PRIDE, an Indian, while responsible for the health, safety, and welfare of a child, did willfully and maliciously fail and omit to provide [A.L.P./A.R.P.][12], a child under eighteen (18) years of age, adequate and appropriate supervision to protect [A.L.P./A.R.P.] from harm and threatened harm of which any reasonable and prudent person responsible for the child's health, safety, and welfare would be aware and exposed [A.L.P./A.R.P.] to illegal activities, *by failing to properly secure [A.L.P./A.R.P.] in a child passenger restraint system in a motor vehicle the defendant operated on the roadways, streets, and highways without a valid driver's licence and at a rate of speed in excess of the speed limit*, in violation Title 18, United States Code, Sections 1151, 1153, and Title 21 Oklahoma Statutes, Section 843.5(C).

Docket No. 3, at 1-2 (emphasis added). Section 843.5(C) reads:

Any person responsible for the health, safety or welfare of a child who shall willfully or maliciously engage in child neglect, as defined in this section, shall, upon conviction, be punished by imprisonment in the custody of the Department of Corrections not exceeding life imprisonment, or by imprisonment in a county jail not exceeding one (1) year, or by a fine of not less than Five Hundred Dollars ($500.00) nor more than Five Thousand Dollars ($5,000.00), or both such fine and imprisonment.

21 OKLA. STAT. § 843.5(C). "Child neglect" is defined in that section as: "the willful or malicious neglect, as defined by Section 1-1-105 of Title 10A of the Oklahoma Statutes, of a child under eighteen (18) years of age by a person responsible for a child's health, safety or welfare." 21 OKLA. STAT. § 843.5(O)(2).

Section 1-1-105(49a) states in pertinent part that "neglect" includes the failure or omission to provide supervision "to protect the child from harm or threatened harm of which any reasonable and prudent person responsible for the child's health, safety or welfare would be aware"[13] and the failure or omission to protect a child from exposure to "illegal activities." 10A

---

[12] Count One relates to A.L.P., and Count Three relates to A.R.P.
[13] "Harm or threatened harm to the health or safety of a child" means any real or threatened physical, mental, or emotional injury or damage to the body or mind that is not

14

OKLA. STAT. § 1-1-105(49a) (1)(c) and (2)(b). The Government charges the Defendant with each of these types of neglect. Thus, to prove its case, the Government must show that the Defendant, a person responsible for the health, safety, and welfare of A.L.P. and A.R.P., each under the age of 18, did willfully or maliciously, fail to protect them from harm of which any reasonable and prudent person would be aware and/or fail to protect them from exposure to illegal activities, namely those listed in the Indictment. Of course, the jurisdictional elements must also be shown.

The Defendant argues that the court should not construe Oklahoma's child neglect statute as including traffic violations *in the presence of* children. Clearly, these violations were not merely *in the presence of* these children. These alleged violations, especially the failure to properly secure A.L.P. and A.R.P. and to then drive at an excessive rate of speed of at least 78 miles per hour *affected the lives of* these children. The Defendant also separates each allegation and argues that "without more" each allegation cannot support a child neglect charge. The allegations are to be taken together.

The allegations in the Indictment are sufficient, as they set forth the elements of the offense charged, put the Defendant on fair notice of the charges against which he must defend, and enable him to assert a double jeopardy defense. The motion to dismiss the child neglect charges as insufficiently alleged is denied.

### **Constitutionality**

The Defendant first argues that 21 OKLA. STAT. § 843.5(C) is unconstitutional as applied to him because it fails to provide him fair notice. Specifically, the Defendant argues that the

---

accidental including, but not limited to, sexual abuse, sexual exploitation, neglect, or dependency." 10A OKLA. STAT. § 1-1-105(49a) (34).

Indictment's pleading of traffic offenses as child neglect is standardless. As he seemed to in his arguments regarding sufficiency of the Indictment, he hangs his hat on the fact that the allegations of failure to properly secure A.L.P. and A.R.P. and to then drive unlicensed at an excessive rate of speed are *mere minor traffic violations* and that each one without more cannot support a charge of child neglect. Without regard to the fact that they are traffic violations, failing to properly secure a child and then driving at a high rate of speed could well be sufficient to find failure to protect a child from harm or threatened harm of which any reasonable and prudent person responsible for the child's health, safety or welfare would be aware.

In any event, although the Defendant states that he is not making a facial challenge, the Government is correct that to the extent he is attempting to do so, he is not entitled to do so. *United States v. Rodebaugh*, 798 F.3d 1281, 1294-95 (10th Cir. 2015) (noting that "a court will consider a law's facial vagueness only if it threatens First Amendment interest or if the challenge is made before enforcement."). *See also United States v. Rose*, No. 21-CR-294-RAW, 2022 WL 1087584, at *1 (E.D. Okla. Apr. 11, 2022); *United States v. Menees*, No. CR-21-151-TDD, 2022 WL 1004868, at *2 (E.D. Okla. Apr. 4, 2022).

The Defendant also argues that 21 OKLA. STAT. § 843.5(C) is unconstitutional as applied to him because it fails to distinguish between felony and misdemeanor child neglect. The Tenth Circuit recently concluded that:

> § 843.5(A) and (B) do not describe both misdemeanor and felony offenses subject to different punishments. Rather, both subsections of the statute describe felony offenses subject to wide sentencing ranges. This wide discretion in sentencing, ranging from a $500 find to life imprisonment, does not render the statute void for vagueness. The Supreme Court has stated that it "has never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." A statute is unconstitutionally vague based on its sentencing fixing provision only if it fails to "specify the range of available sentences with sufficient clarity." Sections 843.5(A) and (B) both specify with sufficient clarity that the sentencing ranges for the felony offenses of child abuse and enabling child abuse are from a fine of $500 to life imprisonment.

>Accordingly, the sentencing fixing provision in § 843.5(A) and (B) are not unconstitutionally vague.

*United States v. Walker*, 74 F.4th 1163, 1186-87 (10th Cir. 2023) (internal citations omitted). As § 843.5(C) has the same sentencing range as § 843.5(A) and (B), the court agrees with the Government that there is every reason to apply the Tenth Circuit's conclusion in *Walker* to § 843.5(C). The Defendant's motion to dismiss the child neglect charges as unconstitutionally vague is denied.

### C. Involuntary Manslaughter Charge

As stated above, the Indictment charges in Count Five:

>On or about May 11, 2022, within the Eastern District of Oklahoma, in Indian Country, the defendant, MICHAEL TRAIG PRIDE, an Indian, did unlawfully kill C.U., while in the commission of an unlawful act not amount to a felony, to wit: *operating a motor vehicle without a valid driver's license and at an excessive rate of speed*, and in the commission in an unlawful manner and without due caution and circumspection, of a lawful act, operating a motor vehicle, which might produce death, in violation of Title 18, United States Code, Sections 1112, 1151, and 1153.

Docket No. 3, at 3 (emphasis added). To prove involuntary manslaughter in this case, the Government must prove:

>(1) that the defendant caused the death of C.U. while operating a motor vehicle without a valid driver's license and at an excessive rate of speed or that he operated a motor vehicle in an unlawful manner, or without due caution and circumspection, which act might produce death;
>(2) that the defendant knew that his conduct was a threat to the lives of others or it was foreseeable to him that his conduct was a threat to the lives of others; and
>(3) the killing took place within the territorial jurisdiction of the United States.

*See* Tenth Circuit Criminal Pattern Jury Instruction 2.54.1.

The Defendant argues that the allegations that he operated a motor vehicle without a valid driver's license and at an excessive rate of speed are insufficient to support a prosecution of involuntary manslaughter. The court cannot find that such allegations could never be sufficient, and the court is not to parse the evidence. While the Government barely responded to the

17

Defendant's motion as to this charge and while the Defendant may well be correct that the Government overcharged this case, only the evidence will tell.

The allegations in the Indictment are sufficient, as they set forth the elements of the offense charged, put the Defendant on fair notice of the charges against which he must defend, and enable him to assert a double jeopardy defense. The motion to dismiss the involuntary manslaughter charge as insufficiently alleged is denied.

IV. **Jury Instructions**

The Defendant requests a pretrial hearing to allow the parties to make argument regarding requested jury instructions. The Defendant further requests preliminary rulings on the parties' requested instructions at this hearing so that the parties will have some guidance before the jury trial begins. The court does not believe this is necessary. As noted above, there are Tenth Circuit pattern jury instructions for second degree murder and involuntary manslaughter. Moreover, child neglect trials in federal courts in Oklahoma have become more common since the Supreme Court's Decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020). The court and the parties will not be "starting from scratch."

Instead, the court directs the parties to meet and confer in person and make a good faith effort to determine whether they can agree upon any instructions or portions of instructions. The parties are further directed to submit any agreed instructions no later than January 5, 2024. The parties may also separately submit any non-agreed instructions by that date. **All** submitted instructions shall include supporting authority.

To the extent the court deems necessary, the court may allow the parties to make argument regarding the instructions at the pretrial conference to be set at a later date.

V.   **Summary**

The Defendant's objection to the Government's proposed Rule 404(b) evidence [Docket No. 63] is hereby OVERRULED.  The motion to dismiss [Docket No. 27] is hereby DENIED.

The parties shall meet and confer in person regarding jury instructions as stated above.  Also as stated above, all jury instructions shall be submitted no later than January 5, 2024.  The unopposed motion for a pretrial hearing regarding instructions [Docket No. 41] is granted insofar as the court will hear argument regarding them as necessary at the pretrial conference.

**IT IS SO ORDERED** this 17th day of November, 2023.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**