# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL TRAIG PRIDE,<br><br>    Defendant. | Case No. CR-23-124-RAW |

## ORDER

    This action arises from a single-vehicle rollover accident on May 11, 2022 that resulted in the deaths of the Defendant's two young daughters and his pregnant partner. The Defendant was driving the vehicle and was originally charged with two counts of child neglect and three counts of involuntary manslaughter. That case was dismissed without prejudice on May 25, 2023. Case No. CR-22-159-JFH, Docket No. 45. The Defendant is charged in the instant case with two counts of child neglect, two counts of second-degree murder, and one count of involuntary manslaughter.

    Now before the court is the Defendant's opposed motion to produce grand jury transcripts [Docket No. 84] and the Government's response thereto [Docket No. 90]. The Defendant requests, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i), that the court order the Government to produce the testimony of *all witnesses* who testified before the grand juries in this case and in the previous case against him, CR-22-159-JFH.

    The Defendant states that he has a particularized need for the grand jury transcripts caused by the Government's change in its interpretation of the evidence, as stated in the

Government's brief filed on October 23, 2023. Docket No. 78. In that filing, the Government states:

> While there are conflicting accounts of the events leading up to the crash, all accounts involve Defendant swerving into oncoming traffic to avoid hitting W.C.'s truck. Initially, the United States was under the mistaken impression Defendant swerved into oncoming traffic to avoid hitting W.C., who was traveling north on US 271 and making a left-hand turn onto McCutchan Road. The impetus for this misunderstanding was W.C. telling Trooper Ryan Williams after the accident that he was "coming out of town," which Trooper Williams interpreted to mean coming from Talihina. Based on this information, Trooper Williams concluded W.C. was traveling north on US 271, and the accident occurred when Defendant swerved to miss W.C.'s truck, which was turning left onto McCutchan Road.
> 
> During trial prep, it was discovered C.R.'s statement to law enforcement was originally misinterpreted. In her statement to Officer Masson, C.R. affirms she was traveling north on US 271 at the time of the accident, with no cars traveling in the same direction in front of her. C.R. recounts she saw Defendant's vehicle swerve into her lane to avoid a truck that was turning right onto McCutchan Road. This indicates W.C. was traveling south on US 271, and Defendant swerved around his truck into oncoming traffic instead of breaking to allow W.C. to make the right turn. Aside from W.C.'s statement that he was "coming from town" and his tacit acceptance of Trooper Williams's leading questions, W.C.'s recorded interview is consistent with C.R.'s account. For example, W.C. stated, "I was driving 60 and they was coming up on me from my rear end boy really fast" and "it's a miracle they didn't catch me," in reference to Defendant's Tahoe. When Trooper Williams asked W.C. if he remembered what was "coming up behind" him right before the accident, W.C. replied, "that one was closing pretty fast and I wasn't too much worried about that because I had a turn signal on and I was stopping all the time slowing down." Additionally, C.R.'s initial statement to law enforcement is captured on Officer Donald Masson's bodycam footage. C.R. unequivocally states that Defendant's Tahoe was "breaking and swerving to miss rear ending the truck that was turning in."

Docket No. 78, at 2-3.

The Defendant argues that due to the Government's new interpretation of the evidence at this late date, he has a particularized need to learn how the Government presented its evidence to the grand juries in the two prosecutions. He seeks to learn whether the evidence presented to the two grand juries was consistent with the facts as all parties had accepted them up to the October 23, 2023 filing – that Mr. McCutchan was driving eastbound and making a left turn into his driveway across Mr. Pride's westbound lane of traffic. He further argues that because the

Government has changed its interpretation of the evidence, it is possible that the grand jury transcripts would include exculpatory evidence that contradicts the Government's new interpretation.[*]

"There is 'a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.'" *United States v. Warren*, 747 F.2d 1339 (10th Cir. 1984) (citation omitted). Disclosure pursuant to Rule 6(e)(3)(E)(i) requires a strong showing of a "particularized need" for the requested grand jury materials. *Id*. (citations omitted). "Particularized need is most often established when there is a need to <u>impeach a witness, refresh his recollection, or test his credibility</u>." *United States, ex. rel. Stone v. Rockwell Intern. Corp.*, 173 F.3d 757, 759 (10th Cir. 1999) (citation and internal quotations marks and brackets omitted) (emphasis added). If a defendant shows a particularized need, such "must result in the disclosure of information <u>limited to the claimed need</u>." *Id*. (citation omitted) (emphasis added). The court has an obligation to conduct an *in camera* examination of the pertinent portions of the grand jury transcripts to determine what portions, if any, meet the claimed need. *Id*. (citation omitted); *In re Special Grand Jury 89-2*, 143 F.3d 565, 572 (10th Cir. 1998).

The Defendant's request for the testimony of *all witnesses* who testified before the grand juries in this case and in the previous case against him is overbroad. The court, however, finds that the Defendant has made a showing of a particularized need for the transcripts of the testimony before the grand juries relating to the directions in which W.C.'s truck and the

---

[*] As the Government argues, a "general claim that disclosure of Grand Jury transcripts will possibly reveal exculpatory evidence is not enough to demonstrate 'particularized need.'" *United States v. Rising*, 867 F.2d 1255, 1260 (10th Cir. 1989). Moreover, even if W.M. was turning left in front of the Defendant, such evidence is not necessarily exculpatory. In fact, the Government had that interpretation of the evidence when it brought the indictments against the Defendant.

3

Defendant's Tahoe were traveling. The court, therefore, will review *in camera* transcripts from both cases relating to the directions W.C.'s truck and the Defendant's Tahoe were traveling. The court will then order production to the Defendant of those portions, if any, that meet the Defendant's particularized need.

Accordingly, the Defendant's motion [Docket No. 84] is hereby granted in part and denied in part. Based on the Defendant's showing of a particularized need, the court orders the Government to submit for *in camera* review the grand jury transcripts in this case and the previous case relating to the directions W.C.'s truck and the Defendant's Tahoe were traveling no later than December 8, 2023.

**IT IS SO ORDERED** this 30th day of November, 2023.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**